IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION - LAW

THE FIRE HOUSE, INC.
17 LIME KILN ROAD
BLOOMSBURY, NJ 08804
    Plaintiff

    v.

DIMITRIOS PAPAGEORGIOU
2829 QUEEN STREET
EASTON, PA 18045

EVANGELOS PAPAGEORGIOU
2829 QUEEN STREET
EASTON, PA 18045

NO.  C-48-CV-2023-6254

JURY TRIAL DEMANDED

FILED
2023 AUG 23 A 10:08
COURT OF COMMON PLEAS
CIVIL DIVISION
NORTHAMPTON COUNTY, PA

COPY

## N O T I C E

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff(s). You may lose money or property or other rights important to you.

<u>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.</u>

LAWYER REFERRAL SERVICE
155 SOUTH NINTH STREET
EASTON, PENNSYLVANIA 18042
TELEPHONE: (610) 258-6333

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA

CIVIL DIVISION - LAW

THE FIRE HOUSE, INC.                  :
17 LIME KILN ROAD                     :     NO.
BLOOMSBURY, NJ 08804                  :
    Plaintiff                         :     JURY TRIAL DEMANDED
                                   :
                                   :     C-48-CV-2023- 6254
v.                                    :
                                   :
DIMITRIOS PAPAGEORGIOU                 :
2829 QUEEN STREET                     :
EASTON, PA 18045                      :
                                   :
                                   :
EVANGELOS PAPAGEORGIOU                 :
2829 QUEEN STREET                     :
EASTON, PA 18045                      :
                                   :

## COMPLAINT

AND NOW COMES, Plaintiff, The Fire House, Inc., by and through its attorney, Ralph J.

Bellafatto, with this Complaint of which the following is a more complete statement:

1.     Plaintiff is Fire House Inc., a business corporation organized and existing under

the laws of the Commonwealth of Pennsylvania with a principal business office at 17 Lime Kiln

Road, Bloomsbury, NJ 08804

2.     Defendants are Dimitrios and Evangelos Papageorgiou, adult individuals residing

at 2829 Queen Street, Easton, PA 10845.

## COUNT I

## BREACH OF CONTRACT/ MONEY DAMAGES

## THE FIRE HOUSE, INC. vs DIMITRIOS PAPGEORGIOU

## AND EVANGELOS PAPAGEORGIOU

3.     Plaintiff hereby incorporates paragraphs 1 through 2 as though the same were set

forth herein at length.

4.     At all times material hereto Defendants leased premises at 1550 Sullivan Trail,

Forks Township, Northampton County, Pennsylvania, the leased premises, from Plaintiff

pursuant to the terms of a commercial lease agreement of August 23, 2018, attached hereto as

exhibit A,

5.     Defendants do business and trade as Richard's Drive-In at the leased premises

6.     Inter alia, the lease provides for a term of 10-years commencing on September 1,

2018, with base rent after the first two years in the amount of $2,000.00 per month, in addition to

operating expenses, property taxes, and other obligations.

7.     Defendants have been in possession of the leased premises since 2018 and

continue in possession at the current time.

8.     Defendants have a long history of inconsistent, late and incomplete payments that

has resulted in outstanding arrearages and other non-monetary defaults, as more fully set forth on

exhibit B attached hereto.

9.     Despite multiple demands to bring the arrearages current and multiple promises

by Defendants to do so, the Defendants have failed to cure their monetary and non-monetary

defaults. As a result Plaintiff served Defendants with a Notice of Default prerequisite to this

lawsuit on or about June 28, 2023. A true and correct copy of the Notice of Default is attached

hereto as exhibit B

10.    Despite having been served with the Notice of Default the Defendants have failed

to take any steps to cure their breaches of the commercial lease agreement.

11.    Defendants' failures to pay rent, property taxes, the other financial obligations

under the lease, and the non-monetary defaults are all continuing.

12.    Plaintiff is entitled to judgement for the outstanding arrearages, acceleration of

rent through the end of the lease term and possession of leased premises.

WHEREFORE, Plaintiff demands judgement against Defendants in the amount of

$69,689.03, plus additional accrued 12% interest per the terms of the lease, plus any additional

arrearages accrued through the time of the judgement together with an award of costs, expenses associated with Plaintiff's exercise of their right to recover possession of the leased premises including attorneys fees, and the amount of unpaid rent for the balance of the term along with whatever additional relief the Court deems appropriate.

## COUNT II

## EJECTMENT/ ORDER FOR POSSESSION

## THE FIRE HOUSE, INC. vs DIMITRIOS PAPGEORGIOU

## AND EVANGELOS PAPAGEORGIOU

13.     Plaintiff hereby incorporates paragraphs 1 through 12 as though the same were set forth herein at length.

14.     Despite the Notice of Default, Defendants have failed to cure their multiple monetary and non-monetary and have failed and/or refused to vacate and surrender possession of the leased premises to Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter judgement in favor of Plaintiff and against Defendants Dimitrios Papageorgiou and Evangelos Papageorgiou for possession of the leased premises together with an award of costs, attorneys fees and whatever additional relief the Court deems appropriate.

Respectfully submitted,

BELLAFATTO LAW OFFICE

BY: _____
        Ralph J. Bellafatto

<u>VERIFICATION</u>

Norman Falk, president of The Fire House Inc., being duly sworn according to law,

deposes and says that he the Plaintiff and that the facts set forth in the foregoing Complaint are

based upon information which he has furnished to his counsel and information which has been

gathered by his counsel in the preparation of this lawsuit. The language of the foregoing

pleading is that of counsel and not of the undersigned himself. The undersigned has read the

foregoing pleading and, to the extent that it is based upon information which has been given to

his counsel, that information is true and correct to the best of his knowledge, information and

belief. To the extent that the content of the foregoing pleading is that of counsel, the undersigned

has relied upon counsel in making this affidavit. The undersigned understands that the

statements therein are made subject to the penalties of 18 Pa. C. S. Section 4904 relating to

unsworn falsification to authorities.

Date: 8\17\2023

_____
Norman Falk

CERTIFICATION

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents."

RALPH J. BELLAFATTO, P.C.

Date: 8/21/23

BY _____
Ralph J. Bellafatto,, #43988
4480 William Penn Highway
Easton, Pa. 18045
610-923-9200

# Exhibit A

# LEASE AGREEMENT

## LESSOR: FIRE HOUSE, INC.

## LESSEE: DIMITRIOS PAPAGEORGIOU

## AND

## EVANGELOS PAPAGEORGIOU

## DATED: August 23, 2018

# TABLE OF CONTENTS

1.  Premises and Parking
2.  Term
3.  Rent
4.  Use
5.  Maintenance, Repairs and Alterations
6.  Insurance; Indemnity
7.  Damage or Destruction
8.  Real Property Taxes
9.  Utilities
10. Assignment and Subletting
11. Default; Remedies
12. Condemnation
13. Estoppel Certificate
14. Lessor's Liability
15. Severability
16. Interest on Past Due Obligations
17. Time of Essence
18. Additional Rent
19. Incorporation of Prior Agreements; Amendments
20. Notices
21. Waivers
22. Recording
23. Holding Over
24. Cumulative Remedies
25. Covenants and Conditions
26. Binding Effect; Choice of Law
27. Subordination
28. Attorney's Fees
29. Lessor's Access
30. Auctions
31. Signs
32. Merger
33. Consents
34. Quiet Possession
35. Security Measures
36. Performance Under Protest
38. Authority
39. Offer

## LEASE AGREEMENT

This LEASE effective this 1st day of September, 2018 by and between Fire House, Inc., (hereinafter referred to as the "Lessor"); and Dimitrios and Evangelos Papageorgiou, (hereinafter referred to as the "Lessee").

## WITNESSETH:

WHEREAS, Lessee desires to conduct business operations and erect a restaurant at a parcel of land located at 1550 Sullivan Trail, Forks Township, Northampton County, Pennsylvania; and

WHEREAS, Lessor owns land located at 1550 Sullivan Trail, Forks Township, Northampton County, Pennsylvania and is willing to lease same to Lessee on the terms and conditions set forth herein; and

Now Therefore, in consideration of One Dollars($1.00)and other good and valuable consideration in hand paid by Lessee to Lessor and the agreements and covenants of Lessee and Lessor contained herein, Lessee and Lessor agree as follows:

1.    PREMISES AND PARKING.

1.1    Premises.    Lessor hereby leases to Lessee and Lessee leases from Lessor for the term, at the rental, and upon all of the other terms and conditions set forth herein, approximately one acre of land, (hereinafter referred to as the "Lease Property") located at 1550 Sullivan Trail, Forks Township, County of Northampton, Commonwealth of Pennsylvania, being a part of a larger tract, the Lease Property being depicted on Exhibit A attached hereto and incorporated herein.

## 2. TERM

2.1 Term. The term of this Lease shall be for ten (10) years commencing on September 1, 2018.

## 3. RENT

3.1 Base Rent.  For the first two (2) years Lessee shall pay to Lessor, as base rent for the premises without any offset or deduction, except as may otherwise expressly provided in this Lease, on the 1st day of each month of the term hereof, monthly payments in the amount of $2,000.00 per month for nine (9) months of the Lease year and in the amount of $1,000.00 per month for three (3) months of the Lease year. For the following three (3) years of the term hereof monthly payments in the amount of $2,000.00. For the following five (5) years of the term hereof monthly payments in the amount of $2,150.00.

3.2 Rent net to Lessor. Except as otherwise expressly provided herein it is the intention of the parties that the rent payable hereunder shall be net to Lessor, so that the Lease shall yield to Lessor the Base Rent specified hereunder during the term of this Lease, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the premises shall be paid by Lessee.

3.3.  Operating Expenses.  Lessee shall, during the term of this Lease, as additional rent, pay and discharge punctually, as and when the same shall become due and payable, in respect to the Premises the following of which shall collectively be referred to as the "Operating Expenses" all sewer rents and charges for water, heat, gas, hot water, electricity, light, telephone, and all costs for the operation, repair, and maintenance in neat, clean, good order and condition of the Premises, including but not limited to the following:

(a) trash disposal and recycling services for the Premises; and

(b) snow removal and parking lot sweeping/maintenance on the Premises; and

(c) grass and weed cutting/maintenance

3.4  Limitation of Liability.   Under no circumstances shall Lessor be liable in damages or otherwise to Lessee, its guests or invitees or to any other persons or property, if any public utility service being provided to the Premises is interrupted or terminated,  nor shall any such interruption or termination be construed as an eviction (actual or constructive) of Lessee.

4.    USE.

4.1.  Use.  The Premises shall be used exclusively for restaurant purposes and for no other purpose.

4.2.  Compliance with Law.

(a)   Lessor represents to Lessee that, to the best of its knowledge, the Premises, in the state existing on the date hereof and with regard to the use for which Lessee will occupy the Premises, does not violate any covenants or restrictions of record, or any applicable zoning or any other statute, rule, regulation, building code regulation or

ordinance or any other statute, rule or regulation in effect on the date hereof.

(b)    Except as provided in Paragraph 5.2(a), Lessee shall, at Lessee's expense, promptly comply with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements of any fire insurance, underwriters or rating bureaus, now in effect or which may hereafter come into effect, whether or not they reflect a change in policy from that now existing, during the term or any part of the term hereof, relating to Lessee's specific manner of use of the Premises and/or the occupation and manner of use by Lessee of the Premises.  Lessee shall not use nor permit the use of the Premises in any manner that will tend to create waste or a nuisance or shall tend to disturb other occupants in the vicinity of the Premises

4.3.  Condition of Premises.

(a)    Lessor shall deliver the Premises to Lessee in its present condition, and Lessee agrees to accept the Premises in its present condition.

(b)    Except as otherwise provided in this Lease, Lessee hereby accepts the Premises in an "as is" condition as of the Commencement Date or the date that Lessee takes possession of the Premises, whichever is earlier, subject to all applicable zoning, municipal,    county and state laws,    ordinances and regulations governing and regulating the use of the Premises and any covenants or restrictions of record, and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto.  Lessee acknowledges that except as set forth herein, neither Lessor nor Lessor's agent has made any representation or warranty as to the present or future suitability of the Premises for the conduct of Lessee's business.

5.    MAINTENANCE  REPAIRS, AND ALTERATIONS.

5.1.  Lessor's Obligation. Lessor shall have no obligation to Lessee for any portion of the leased premises or the building to be erected thereon.

5.2.  Lessee's Obligations.

Page 6

(a)   Lessee shall have the sole responsibility for all maintenance of the leased premises, parking lot, and the building to be erected thereon and all mechanical systems, windows and all other components.

(b)   Lessee acknowledges that it will maintain the Premises in a first class fashion.  If Lessee fails to perform Lessee's obligations under this Section 5.2, Lessor may enter upon the Premises after providing Lessee with at least ten (10) days prior written notice to Lessee (except in the case of emergency, in which event no notice shall be required), perform such obligations on Lessee's behalf and put the Premises and/or Building in good order, condition and repair and the cost thereof shall be due and payable as additional rent to Lessor together with Lessee's next Base Rent installment.

(c)   On the last day of the term hereof, or on any sooner termination, Lessee shall surrender the Premises to Lessor in good condition (subject to condemnation), ordinary wear and tear excepted, clean and free of debris. Any damage or deterioration of the Premises and/or the Building shall not be deemed ordinary wear and tear if the same could have been prevented by good maintenance practices.  Lessee shall repair any damage to the Premises and/or Building occasioned by the installation or removal of Lessee's trade fixtures, alterations, furnishings, and equipment. Notwithstanding anything to the contrary otherwise stated in this Lease, Lessee shall leave the air lines, power panel, electrical distribution systems, lighting fixtures, affixed space heaters, roof air conditioning and plumbing if any, on the Premises in good operating condition.

5.3.  Alteration and Additions.

(a)   Lessee may, at Lessee's sole cost and expense, from time to time during the term of this Lease,   make alterations, improvements, additions, or utility installations in, on, or about the Premises, provided however, that the structural soundness of the Building is not impaired thereby, the value of the Building and the Premises are not diminished, and the character of the Building and Premises are not changed thereby.  In any event, Lessee shall make no change or alteration to the exterior of the Premises nor the exterior of the Building without Lessor's prior written consent.  As used in this Section the term "Utility Installation" shall mean carpeting, window coverings, air lines, power panels, electrical distribution systems,

Page 7

lighting fixtures, space heaters, air conditioning, plumbing, sprinkler equipment, and fencing.

(b) Any alterations, improvements, additions or Utility Installations in or about the Premises or the Building that Lessee shall desire to make and which requires the consent of the Lessor shall be presented to Lessor in written form, with proposed detailed plans. If Lessor shall give its consent (which shall not be withheld unreasonably), the consent shall be deemed conditioned upon Lessee acquiring a permit to do so from appropriate governmental agencies, the furnishing of a copy thereof to Lessor prior to the commencement of the work, and the compliance by Lessee of all conditions of said permit in a prompt and expeditious manner. No work shall be performed until Lessee has its contractors and subcontractors execute Stipulation Against Liens and until Lessee files same in the Northampton County Clerk of Civil Division's Office.

(c) Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use in the Premises or the Building, and shall permit mechanic's or materialmen's lien to be filed against the Premises, or the Building, or any interest therein. Lessee shall give Lessor not less than ten (10) days' notice prior to the commencement of any work in the Premises costing in excess of $2,500.00, and Lessor shall have the right to post notices of non-responsibility in or on the Premises or the Building as provided by law. If any such liens are filed and Lessee shall, in good faith, contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense defend itself and Lessor against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof against the Lessor or the Premises or the Building. In addition, Lessor may require Lessee to pay Lessor's attorney's fees and costs in participating in such action if Lessor shall decide it is to Lessor's best interest to do so.

(d) All alterations, improvements, additions, and utility Installations (whether or not such Utility Installation constitute trade fixtures of Lessee) , which may be made on the Premises, shall be the property of Lessor and shall remain upon and be surrendered with the Premises at the expiration of the Lease. term. Notwithstanding the provisions of this Section, Lessee's machinery and equipment, other than that which is affixed to the Building so that it cannot be removed

Page 8

without material damage to the Building, and other than Utility Installations, shall remain the property of Lessee and may be removed by Lessee subject to the provisions of this Section.

6.    INSURANCE; INDEMNITY.

6.1.  Liability Insurance--Lessee.   Lessee shall, at Lessee's expense obtain and keep in force during the term of this Lease a policy of Combined Single Limit Bodily Injury and Property Damage insurance insuring Lessee and Lessor against any liability arising out of the use, occupancy, or maintenance of the Premises and the Building.  Such insurance shall be in an amount not less than One Million ($1,000,000.00) Dollars per occurrence.   The policy shall insure performance by Lessee of the indemnity provisions of this Section 6.

6.2.  Property Insurance.   Lessee shall, at its sole cost and expense, obtain and keep in force during the term of this Lease a policy or policies of insurance covering loss or damage to the Premises, Building, fixtures, Building improvements and appurtenances, in an amount not less than One Hundred Percent (100%) of the full replacement value, and Lessee's personal property, fixtures, equipment or Lessee improvements, in an amount not less than Eighty Percent (80%) of the full replacement value thereof, as the same may exist from time to time, providing protection against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, flood (in the event same is required by a lender having a lien on the Premises) special extended perils ("all risk" as such term is used in the insurance industry), business interruption (in an amount not less than the rent and additional rent due hereunder), and such other insurance as Lessor or any first mortgagee of the Premises may in their discretion reasonably require from time to time and which is generally obtained in the marketplace by lessees of net leases.

6.3  Workers' Compensation Insurance.  The Lessee shall maintain Workers' Compensation and Employers' Liability insurance limits in amounts equal to the statutory requirements of the Commonwealth of Pennsylvania.

6.4  Excess Liability/Umbrella.   The Lessor and Lessee may secure umbrella or excess liability insurance to satisfy insurance limits required by this section.

6.5  Blanket Policies.   Lessee may carry any or all of such

insurance under blanket policies or policies shared with affiliates. In any case, Lessee shall deliver evidence of insurance as provided herein.

6.6. <u>Recognized Insurance Companies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least B plus, or such other rating as may be required by a lender having a lien on the Premises, as set forth in the most current issue of "Best's Insurance Guide". Except for operation at the Premises in accordance with the terms hereof, Lessee shall not do or permit to be done anything which shall invalidate the insurance policies carried by Lessor. Lessee shall deliver to Lessor copies of liability insurance policies required under any provisions of this Section 7 or certificates evidencing the existence and amounts of such insurance within seven (7) days after the Commencement Date. No such policy shall be cancelable or subject to reduction of coverage or other modification except after fifteen (15) days prior written notice to Lessor. Lessee shall, at least fifteen (15) days prior to the expiration of such policies, furnish Lessor with renewals or "binders" thereof.

6.7. <u>Waiver of Subrogation</u>. Lessee and Lessor each hereby release and relieve the other, and waive their entire right of recovery against the other for loss or damage arising out of incident to the perils insured against which perils occur in, on or about the Premises, whether due to the negligence of Lessor or Lessee or their agents, employees, contractors and/or invitees. Lessee and Lessor shall, upon obtaining the policies of insurance required give notice to the insurance carrier or carriers that the foregoing mutual waiver of subrogation is contained in this Lease.

6.8. <u>Indemnity</u>. Except as otherwise provided in this Lease, from the earlier of the Commencement Date or the date Lessee first occupies the Premises for the conduct of business and throughout the term, Lessee shall indemnify and hold harmless Lessor from any and all claims arising from Lessee's negligent use of the Premises, or from the conduct of Lessee's business or from any activity, work or things done, permitted or suffered by Lessee (other than by Lessor or its agents, servants or contractors) in or about the Premises. Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor (and counsel selected by Lessee's insurer shall be deemed reasonably satisfactory) and Lessor shall cooperate with Lessee in such defense. However, notwithstanding anything herein contained to the contrary, Lessee shall not be obligated

Page 10

or required hereunder, to hold harmless or indemnify Lessor from or against any liability, loss, cost, expense or claim arising to the extent of any act, omission or negligence of Lessor or its agents, servants, employees or contractors.

7.    DAMAGE OR DESTRUCTION.

7.1.   Notice of Casualty, Continuation of Lease, Restoration. In the event that the Building or the Premises, or any part or parts thereof, shall be damaged or destroyed, in whole or in part, by fire or other casualty:

(a)  Lessee shall immediately notify Lessor thereof;

(b)  This Lease shall not terminate but shall continue in full force and effect, nor shall Base Rent or any additional rent be abated or reduced in any manner;

(c)  Lessee shall with due diligence and dispatch, repair, rebuild and restore the Building and the Premises, and every part or parts thereof, as nearly practicable to the same condition as existed immediately prior to the occurrence of such damage or destruction.

(d)   Notwithstanding the above, in the event that the building is totally destroyed or if the damage to the building cannot be repaired within 120 days of the casualty, then either party shall have the option to terminate the lease.

7.2  Waiver.   Lessor and Lessee waive the provisions of any statute which relate to termination of leases when leased property is destroyed and agree that such event shall be governed by the terms of this Lease.

8.    REAL PROPERTY TAXES.

8.1  Payment of Taxes.   Upon submission of statements from Lessor for such taxes, Lessee shall pay prior to delinquency the Real Property Taxes as defined herein, applicable to the Premises during the Lease term. Lessee shall throughout the term of this Lease, pay all such taxes directly to the taxing authorities. Lessor shall, within 30 days of receipt of same forward to Lessee all tax bills. Throughout the term of this Lease, Lessee shall pay all such taxes within ten days after submission by Lessee by check payable to Lessor.

8.2  Definition of "Real Property Tax".  As used herein, the term "Real Property Tax" shall include any real estate tax or assessment, general, special, ordinary or extraordinary, and any license fee, commercial rental tax, levy or tax  (other than inheritance, personal income or estate taxes),  imposed on the Premises or any portions thereof in respect of any period on or after the Commencement Date and before the last day of the term of the Lease, by any authority having the direct or indirect power to tax, including any city, county, state or federal government, or any school, agricultural, sanitary, drainage or other improvement district thereof. as against any legal or equitable interest in the Lot or Building or in any portions thereof (but not any other property) .  The term "Real Property Tax" shall also include any tax, fee, levy, assessment or charge in substitution of, partially or totally, any tax, fee, levy, assessment or charge hereinabove included within the definition of "Real Property Tax."  For those assessments that represent new capital expenditures, lessee shall be responsible for its prorata portion of the life of those capital expenditures only.

8.3  Real Property Tax.   It is the intention of the parties that Lessee shall pay all real estate and other taxes assessed against the improvements being made by it and a pro rata share of the land that it is leasing hereby.

9. UTILITIES.   Lessee shall pay for all water, sewer, gas, heat, light, power, telephone and any and all other utilities and services supplied to the Premises, together with any taxes thereon. Lessee, and to the extent required by he utility, Lessor shall cause, prior to the Commencement Date, all such services to be separately metered.

10.  ASSIGNMENT AND SUBLETTING.

10.1 Lessor's Consent Required. Lessee may not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber (hereinafter collectively or individually referred to as an "Assignment") all or any part of Lessee's interest in the Lease or in the Premises, without Lessor's prior written consent, except to a wholly-owned affiliate of lessee, in which case lessee shall remain responsible for all obligations hereunder for the balance of the Lease and all options exercised.

10.2  Terms and Conditions of Assignment. No Assignment shall release Lessee of Lessee's obligations hereunder (including those

relating to Operating Expenses), and to perform all other obligations to be performed by Lessee hereunder. In the event of default by any assignee of Lessee or any successor Lessee, in the performance of any of the terms hereof, Lessor may proceed directly against Lessee without the necessity of exhausting remedies against said assignee.

10.3 <u>Terms and Conditions Applicable to Subletting</u>. The following terms and conditions shall apply to any subletting by Lessee of all or any part of the Premises and shall be included in subleases:

(a) Lessee hereby assigns and transfers to Lessor all of Lessee's interest in all rentals and income arising from any sublease heretofore or hereafter made by Lessee, and Lessor may collect such rent and income and apply same toward Lessee's obligations under this Lease; provided, however, that until a default shall occur in the performance of Lessee's obligations under this Lease and the expiration of all applicable notice and grace periods, Lessee shall have the sole right to receive, collect, and enjoy the rents and income accruing under such sublease. Lessor shall not, by reason of this or any other assignment of such sublease to Lessor nor by reason of the collection of the rents from a sublessee be deemed liable to the sublessee for any failure of Lessee to perform and comply with any of Lessee's obligations to such sublessee under such sublease. Lessee hereby irrevocably authorizes and directs any such sublessee, upon receipt of a written notice from Lessor stating that a default exists in the performance of Lessee's obligations under this Lease and all applicable notice and grace periods have expired, to pay to Lessor the rents due and to become due under the sublease. Lessee agrees that such sublessee shall pay such rents to Lessor without any obligation or right to inquire as to whether such default exists and notwithstanding any notice from or claim from Lessee to the contrary. Lessee shall have no right or claim against such sublessee or Lessor for any such rents so paid by said sublessee to Lessor. Lessor shall apply all such sums received to the sums due hereunder.

(b) In the event Lessee shall default in the performance of its obligations under this Lease and all applicable notice and grace periods shall have expired, Lessor, at its option and without any obligation to do so, may require any sublessee to attorn to Lessor, in which event Lessor shall undertake the obligations of Lessee under such sublease from the time of the exercise of said option to the termination of such sublease; provided, however, Lessor shall not be

liable for any prepaid rents or security deposit paid by such sublessee to Lessee or for any other prior defaults of Lessee under such sublease.

(c)   No sublessee shall further assign or sublet all or any part of the Premises without Lessor's prior written consent, which shall not be withheld unreasonably.

(d)   With respect to any subletting to which Lessor has been notified in writing, Lessor agrees to deliver a copy of any notice of default given to Lessee under the Lease to the sublessee. Such sublessee shall have the right to cure a default of Lessee within ten (10) days after service of said notice of default upon such sublessee.

10.4   Reasonable Consent.   No consent required from Lessor under this Section 10 shall be withheld unreasonably.

11.   DEFAULT; REMEDIES.

11.1   Default.   The occurrence of any one or more of the following events shall constitute a material default of this Lease by Lessee:

(a)   The abandonment of the Premises by Lessee, unless lessee agrees to continue to be responsible for the payment of all financial obligations hereunder and for all maintenance of the building.  In the event of an abandonment, lessor shall have the option to terminate the Lease upon 90 days' notice and to render the lease null and void.

(b)   The failure by Lessee to make any payment of rent required to be made by Lessee hereunder, as and when due, where such failure shall continue for a period of ten (10) days after written notice thereof from Lessor to Lessee.  In the event that Lessor serves Lessee with a notice to pay rent or quit pursuant to applicable unlawful detainer statutes such notice to pay rent or quit shall also constitute the notice required by this subparagraph.

(c)   The failure by Lessee to make any other payment required to be made by Lessee hereunder, where such failure shall continue for a period of thirty (30) days after written notice thereof from Lessor to Lessee.

(d)   Except as otherwise provided in this Lease,  the failure

Page 14

by Lessee to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Lessee, other than described in subparagraphs (b) and (c), supra, where such failure shall continue for a period of thirty (30) days after written notice thereof from Lessor to Lessee; provided, however, that if the nature of Lessee's noncompliance is such that more than thirty (30) days are reasonably required for its cure, then Lessee shall not be deemed to be in default if Lessee commenced such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion. To the extent permitted by law, such thirty (30) day notice shall constitute the sole and exclusive notice required to be given to Lessee under applicable unlawful detainer statutes.

(e)  (i) The making by Lessee of any general arrangement or general assignment for the benefit of creditors; (ii) Lessee becomes a "debtor" as defined in 11 U.S.C. Section 101 or any successor statute thereto (unless, in the case of a petition filed against Lessee, the same is dismissed within ninety (90) days) ; (iii) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where possession is not restored by Lessee within ninety (90) days; or (iv) the attachment, execution or other judicial seizure of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, which such seizure is not discharged within ninety (90) days. In the event that any provision of this Section 12.1(e) is contrary to any applicable law, such provision shall be of no force or effect.

11.2    Remedies. In the event of any such material default by Lessee, Lessor may at any time thereafter, with or without notice or demand and without limiting Lessor in the exercise of any right or remedy which Lessor may have by reason of such default:

(a)  Terminate Lessee's right to possession of the Premises by any lawful means, in which case this Lease and the term hereof shall terminate and Lessee shall immediately surrender possession of the Premises to Lessor. In such event Lessor shall be entitled to recover from Lessee all damages incurred by Lessor by reason of Lessee's default including, but not limited to, the cost of recovering possession of the Premises; expenses of reletting, including reasonable and necessary renovation and alteration of the Premises, reasonable attorneys' fees, and any real estate commission actually paid; the amount of the unpaid rent for the balance of the term in excess of rental income received by Lessor, discounted to present value.

Page 15

(b)    Maintain Lessee's right to possession in which case this Lease shall continue in effect whether or not Lessee shall have vacated or abandoned the Premises.  In such event Lessor shall be entitled to enforce all of Lessor's rights and remedies under this Lease, including the right to recover the rent as it becomes due hereunder.

(c)    Pursue any other remedy now or hereafter available to Lessor under the laws or judicial decisions of the Commonwealth of Pennsylvania.   Unpaid installments of rent and other unpaid monetary obligations of Lessee under the terms of this Lease shall bear interest from the date due at twelve (12%) percent per annum.

11.3    Default by Lessor.  Lessor shall be in default hereunder if Lessor fails to perform any of its obligations required of Lessor within a reasonable time, but in no event later than thirty (30) days after written notice by Lessee to Lessor and to the holder of any first mortgage or deed of trust covering the Premises whose name and address shall have theretofore been furnished to Lessee in writing, specifying wherein Lessor has failed to perform such obligation or if any representation or warranty of Lessor contained herein shall be untrue in any material manner; provided, however, that if the nature of Lessor's obligation is such that more than thirty (30) days are required for performance then Lessor shall not be in default if Lessor commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion.

11.4    Late Charges.   Lessee hereby acknowledges that late payment by Lessee to Lessor of Base Rent,  or other sums due hereunder will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain.  Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed on Lessor by the terms of any mortgage or deed of trust covering the Premises.  Accordingly, if any installment of Base Rent, or any other sum due from Lessee shall not be received by Lessor or Lessor's designee within ten (10) days after such amount shall be due, as extended by the provisions of Section 12.1, then, without any requirement for notice to Lessee, Lessee shall pay to Lessor a late charge equal to three percent (3%) of such overdue amount. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of late payment by Lessee.  Acceptance of such late charge by Lessor shall

in no event constitute a waiver of Lessee's default with respect to such overdue amount, nor prevent Lessor from exercising any of the other rights and remedies granted hereunder. In the event that a late charge is payable hereunder, whether or not collected, for three (3) installments of Base Rent in any calendar year, the Base Rent for the following calendar year shall automatically become due and payable quarterly in advance, rather than monthly, notwithstanding Section 3.1 or any other provision of this Lease to the contrary.

12. <u>CONDEMNATION</u>. If the Premises or any portion thereof or the Building are taken under the power of eminent domain, or sold under the threat of the exercise of said power (all of which are herein referred to as "Condemnation"), this Lease shall terminate as to the part so taken as of the date the condemning authority takes title or possession, whichever first occurs. This Lease shall remain in full force and effect as to the portion of the Building remaining, except that the rent shall be reduced in the proportion that the floor areas of the Building taken bears to the total floor area of the Building. If more than twenty (20%) percent in floor area of the building or the parking lot is taken or if after the taking the Building may no longer be lawfully occupied for the conduct of Lessee's business, at the option of Lessee, this Lease shall terminate upon ten (10) days written notice to Lessor. No reduction of rent shall occur if the only area taken is that which does not have the Building, or parking lot located thereon. Any award for the taking of all or any part of the Premises under the power of eminent domain or any payment made under threat of the exercise of such power shall be the property of Lessor, whether such award shall be made as compensation for the taking of the fee, or as severance damages; provided, however, that Lessee shall be entitled to any separated award for diminution in value of the leasehold or for loss of or damage to Lessee's trade fixtures and removable personal property. In the event that this Lease is not terminated by reason of such Condemnation, Lessor shall to the extent of severance damages received by the Lessor in connection with such condemnation, repair any damage to the premises caused by such Condemnation except to the extent that Lessee has been reimbursed therefore by the condemning authority. Lessee shall pay any amount in excess of such severance damages required to complete such repair, not to exceed the amount it has received as a result of the condemnation.

13. <u>ESTOPPEL CERTIFICATE</u> Each party (hereinafter referred to as the "responding party") shall at any time upon not less than thirty (30) days' prior written notice from the other party

(hereinafter referred to as the "requesting party") execute, acknowledge, and deliver to the requesting party a statement in writing: (i) certifying that this Lease is unmodified and whether it is in full force and effect (or, if modified, stating the nature of such modification and certifying whether this Lease, as so modified, is in full force and effect), and the date to which the rent and other charges are paid in advance, if any; and (ii) acknowledging that there are not, to the responding party's knowledge, any uncured defaults on the part of the requesting party, or specifying such defaults if any are claimed. Any such statement may become conclusively relied upon by any prospective purchaser, subtenant, assignee of Lessee's interest in this Lease, or encumbrancer of the Premises or of the business of the requesting party.

14.   LESSOR'S LIABILITY

(a) The term "Lessor" as used herein shall mean only the owner or owners, at the time in question, of the fee title or a lessee's interest in a ground lease of the Premises; and in the event of any transfer of such title or interest, Lessor herein named (and in the case of any subsequent transfers then the grantor) shall be relieved from and after the date of such transfer of all liability as respects Lessor's obligations thereafter to be performed, provided that any funds in the hands of Lessor or the then grantor at the time of such transfer, in which Lessee has an interest, shall be delivered to the grantee. The obligations contained in this Lease to be performed by Lessor shall, subject as aforesaid, be binding on Lessor's successors and assigns, only during their respective periods of ownership.

(b)   The liability of Lessor to Lessee or any default by Lessor under the terms of this Lease shall be limited to the interest of Lessor in the Premises and Lessee agrees to look solely to Lessor's interest in the Premises for the recovery of any judgment from the Lessor, it being intended that no partner or principal of Lessor nor any other property disclosed or undisclosed of such partners or principals shall be personally liable for any judgment or deficiency.

15.   SEVERABILITY.  The invalidity of any provision of this Lease as determined by a court of competent jurisdiction shall in no way affect the validity of any other provision hereof.

16.   INTEREST ON PAST-DUE OBLIGATIONS.  Except as expressly

Page 18

herein provided, any amount due to Lessor not paid when due shall bear interest at the rate of twelve (12%) percent per annum. Payment of such interest shall not excuse or cure any default by Lessee under this Lease; provided, however, that interest shall not be payable on late charges incurred by Lessee nor on any amounts upon which late charges are paid by Lessee.

17.   <u>TIME OF ESSENCE</u>.  Time is of the essence with respect to the obligations to be performed under this Lease.

18.   <u>ADDITIONAL RENT</u>.  All monetary obligations of Lessee to Lessor under the terms of this Lease, including but not limited to, the Operating Expenses and insurance and tax expenses payable shall be deemed to be rent.

19.   <u>INCORPORATION OF PRIOR AGREEMENTS; AMENDMENTS</u>. This Lease contains all agreements of the parties with respect to any matter mentioned herein.  No prior or contemporaneous agreement or understanding pertaining to such matter shall be effective.  This Lease may be modified in writing only, signed by the parties in interest at the time of the modification. Except as expressly provided in this Lease, Lessee hereby acknowledges that no real estate broker, if any, on this transaction nor the Lessor or any employee or agents of any such persons has made any oral or written warranties or representations to Lessee relative to the condition or use by Lessee of the Premises or the Building and under no circumstances shall Lessee be responsible for any capital improvements to the building.

20.   <u>NOTICES</u>.  Any notice required or permitted to be given hereunder shall be in writing sent by certified mail, and, shall be deemed sufficiently given if addressed as follows:

> If to Lessee:
>
>> Dimitrious Papageorgiou
>> 2829 Queen ~~Street~~ Avenue
>> Easton, PA 18045
>
> with copy to:
>> Keene J. Jabbour
>> ~~Steven B. Molder~~, Esq.
>> ~~904 Lehigh Street~~ 701 Washington Street
>> Easton, PA 18042

If to Lessor:

> The Fire House, Inc.
> c/o Norman Falk
> 17 Lime Kiln Road
> Bloomsbury, NJ 08804-3207

with copy to:

> Daniel E. Cohen, Esq.
> Laub, Seidel, Cohen, Hof & Reid, LLC
> 8 Centre Square
> Easton PA 18042

Any party may notice the others actually received specify a different address for notice purposes. A copy of all notices required or permitted to be given to Lessor hereunder shall be concurrently transmitted to such party or parties at such addresses as Lessor may from time to time hereafter designate by notice to Lessee.

21. <u>WAIVERS</u>. No waiver by Lessor of any provision hereof shall be deemed a waiver of any other provision herein or of any subsequent breach by Lessee of the same or any other provision. Lessor's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to or approval of any subsequent act by Lessee. The acceptance of rent hereunder by Lessor shall not be a waiver of any preceding breach by Lessee of any provision hereto, other than the failure of Lessee to pay the particular rent so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent.

22. <u>RECORDING</u>. Lessee and Lessor shall, upon request of the other, execute, acknowledge, and deliver to Lessor in recordable form a "short form" memorandum of this Lease for recording purposes.

23. <u>HOLDING OVER</u>. If Lessee with Lessor's consent remains in possession of the Premises or any part thereof after the expiration of the term hereto, such occupancy shall be a tenancy from month to month upon all the provisions of this Lease pertaining to the obligations of Lessee, but all Options, if any, granted under the terms of this Lease shall be deemed terminated and be of no further effect during said

Page 20

month to month tenancy. The Base Rent during the holding-over period shall be one and one-half (1 ½) times the original Base Rent.

24. <u>CUMULATIVE REMEDIES</u>.  No remedy or election hereunder shall be deemed exclusive but shall, wherever possible be cumulative with all other remedies at law or in equity.

25. <u>COVENANTS AND CONDITIONS</u>. Each provision of this Lease performable by Lessee or Lessor shall be deemed both a covenant and a condition.

26. <u>BINDING EFFECT; CHOICE OF LAW</u>.  Subject to the provisions of Section 15, this Lease shall bind the parties and their successors and assigns.  This Lease shall be governed by the laws of the Commonwealth of Pennsylvania and applicable regulations and ordinances of the Township of Forks, and any litigation concerning this Lease between the parties hereto shall be initiated in Northampton County, which shall have exclusive venue of any action between the parties.

27. <u>SUBORDINATION</u>.

(a)  This Lease, and any Option granted hereby, at Lessor's option, shall be subordinate to any ground lease, mortgage, deed of trust, or any other hypothecation or security now or hereafter placed upon the Premises and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof. Notwithstanding such subordination, Lessee's right to quiet possession of the Premises and to all of its rights, options, and privileges hereunder shall not be disturbed or diminished if Lessee is not in default of its obligations hereunder beyond the expiration of any applicable notice and grace period, unless this Lease is otherwise terminated (other than pursuant to this Paragraph 28) pursuant to its express terms.  If any mortgagee, trustee or ground lessor shall elect to have this Lease and any Options granted hereby made prior to the lien of its mortgage, deed of trust or ground lease, and shall give written notice thereof to Lessee, this Lease and such Options shall be deemed prior to such mortgage, deed of trust or ground lease, whether this Lease or such Options are dated prior to or subsequent to the date of said mortgage, deed or trust, or ground lease or the date of recording thereof.  Lessor shall use its best efforts to obtain a non-disturbance agreement from its present lender.

Page 21

(b)   Provided the foregoing  non-disturbance protections are maintained,  Lessee agrees to execute any documents reasonably required to effectuate an attornment, a subordination or to make this Lease or any Option granted herein prior to the lien of any mortgage, deed of trust or ground lease as the case may be. Lessee's failure to execute such documents within thirty (30) days after written demand shall constitute a material default by Lessee hereunder.

28.   ATTORNEYS' FEES.  If either party named herein brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, on trial or appeal, shall be entitled to its reasonable attorneys' fees to be paid by the losing party as fixed by the court.

29.   LESSOR'S ACCESS. Lessor and Lessor's agents shall have the right to enter the Premises at reasonable times after reasonable advance written notice for the purpose of extending any utilities, services or related items, inspecting the Premises, showing the Premises to prospective purchasers, lenders, or during the last twelve (12) months of the term, lessees, and making such alterations, repairs, improvements or additions to the Premises or to the Building of which they are a part as Lessor shall be obligated to make. Lessor may at any time, place on or about the Premises or the Building any ordinary "For Sale" signs and Lessor may at any time during the last twelve (12) months of the term hereof place on or about the Premises any ordinary "For Lease" signs.   All activities of Lessor pursuant to this Paragraph shall be without abatement of rent.

30.   AUCTIONS.    Lessee shall not conduct, nor permit to be conducted, either voluntarily or involuntarily, any auction upon the Premises without first having obtained Lessor's prior written consent. Notwithstanding anything to the contrary in this Lease, Lessor  shall not  be  obligated to  exercise any standard of reasonableness in determining whether to grant such consent.

31.   SIGNS.  Lessee shall have the right and privilege of erecting signs for advertising purposes in connection with its business at the Premises, provided, however; that all signs comply with the applicable rules and regulations of the Township of Forks, and Lessee shall remove same at the expiration or sooner termination of this Lease. Under no circumstances, however, shall Lessee place a sign on any portion of the roof of the Building.

Page 22

32.   <u>MERGER</u>.  The voluntary or other surrender of this Lease by Lessee, or a mutual cancellation thereof, or a termination by Lessor, shall not work a merger, and shall, at the option of Lessor, terminate all or any existing subtenancies or may, at the option of Lessor, operate as an assignment to Lessor of any or all of such subtenancies.

33.   <u>CONSENTS</u>.  Except for Section 31, supra, wherever in this Lease the consent of one party is required to an act of the other party such consent shall not be withheld unreasonably or delayed.

34.   <u>QUIET POSSESSION</u>.  Upon Lessee paying the rent for the Premises and observing and performing all of the covenants, conditions, and provisions on Lessee's part to be observed and performed hereunder, Lessee shall have quiet possession of the Premises for the entire term hereof subject to all of the provisions of this Lease. The individuals executing this Lease on behalf of Lessor represent and warrant to Lessee that they are fully authorized and legally capable of executing this Lease on behalf of Lessor and that such execution is binding upon all parties holding an ownership interest in the Premises.

35.   <u>SECURITY MEASURES</u>. Lessee hereby acknowledges that Lessor shall have no obligation whatsoever to provide guard service or other security measures for the benefit of the Premises.    Lessee assumes all responsibility for the protection of Lessee, its agents, employees, licensees, invitees, and the property of Lessee and of Lessee's agents and invitees from acts of third parties. Nothing herein contained shall prevent Lessor, at Lessor's sole option, from providing security protection for the Premises or any part thereof.

36.   <u>PERFORMANCE UNDER PROTEST</u>. If at any time a dispute shall arise as to any amount of money to be paid by one party to the other under the provisions hereof, the party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall   not be regarded as a voluntary payment, and there shall survive the right on the part of said party to institute suit for recovery of such sum. If it shall be adjudged that there was no legal obligation on the part of said party to pay such sum or any part thereof, said party shall be entitled to recover such sum or so much thereof as it was not legally required to pay under the provisions of this Lease.

37.   <u>AUTHORITY</u>.  If Lessee is a corporation, trust, or general or

limited partnership, Lessee represents that each individual executing this Lease on behalf of such entity is duly authorized to execute and deliver this Lease on behalf of said entity.

38. OFFER. Preparation of this Lease by Lessor or Lessor's agent and submission of same Lessee shall not be deemed an offer of Lease. This Lease shall only become binding upon Lessor and Lessee only when fully executed by Lessor and Lessee.

LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN AND, BY EXECUTION OF THIS LEASE, SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO. THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.

ATTEST:

_____

LESSOR: FIRE HOUSE, INC.

Norman Falk, President

ATTEST:

_____

Dimitrios  Papageorgiou

Evangelos Papageorgiou

# Exhibit B

**BELLAFATTO**

LAW OFFICE · JOSEPH J. BELLAFATTO-JOSEPH@BELLAFATTO.COM*
ABIGAIL M. BELLAFATTO-ABIGAIL@ BELLAFATTO.COM*+

LICENSED IN PA*
LICENSED IN NJ+

June 28, 2023

*Dimitrios Papageorgiou*
*2829 Queen Street*
*Easton, PA 18045*

*Evangelos Papageorgiou*
*1550 Sullivan Trail*
*Easton, PA 18040*
*(Sent via CERTIFIED MAIL POSTAGE PREPAID)*

> RE: **NOTICE OF DEFAULT**
> **Lease Agreement with The Fire House, Inc.**
> **Subject Premises:   1550 Sullivan Trail in Forks Township**

Dear Messrs. Papageorgiou,

Please be advised that my firm represents your landlord, The Fire House, Inc., regarding the above-addressed premises. This Notice of Default serves as formal notice pursuant to the Landlord and Tenant Act of 1951, as amended, as well as your Lease Agreement that you are in default, as set forth more fully hereinbelow.

## I.    Monetary Defaults.

RENT. Article 3, entitled Rent, of the Lease Agreement requires you to pay Two Thousand Dollars ($2,000.00) on the first day of each new month. You have failed to make the required monthly payments of rents as prescribed. Accordingly, you have a rent arrearage of Twenty-Two Thousand, Five hundred Dollars ($22,500.00), up to and including June of 2023. Additionally, Article 11.4, provides for a three (3.00%) percent Late Charge on all sums outstanding more than ten (10) days from the date they become due. Your total Late Charge arising from Rent is presently Six Hundred Seventy-Five Dollars ($675.00).

Pursuant to Article 11.1(b) of your Lease Agreement, you now have ten (10) days from the date of this Notice to pay your landlord the sum of Twenty-Three Thousand One Hundred Seventy Five Dollars ($23,175.00) or you will be in material default of your obligations under the Lease Agreement.

Article 11.4 of the Lease Agreements provides for the automatic acceleration of Rent in circumstances of chronic lateness. The Rent is accelerated from monthly to quarterly, paid in advance. Be advised, as the Lease Agreement commenced September 1st, the next quarter (June, July

and August) of Rent is to be combined in the amount of Six Thousand Dollars ($6,000.00) and shall be due on July 1st.

<u>REAL PROPERTY TAXES</u>. Article 8 directs that as the tenant, you are responsible for the payment of all Real Property Taxes within ten (10) days of a tax statement's submission to you by your Landlord. You have failed to make the requisite payments of real property taxes as prescribed by Article 8.1 requiring your landlord to do so on your behalf in contravention with the express net terms contained in the Lease Agreement.  As of the date hereof, you have an arrearage of Forty Thousand Eight Hundred Ten Dollars and Seventy-One Cents ($40, 810.71) arising from real property taxes. Additionally, Article 11.4 provides for a three (3.00%) percent Late Charge on all sums not outstanding more than ten (10) days from the date they become due. Your total Late Charge arising from Real Property Taxes is presently One Thousand Seven Hundred Four Dollars and Twenty-One Cents ($1,704.21).

Please be advised, Article 18 of your Lease Agreement states, "all monetary obligations of Lessee to Lessor under the terms of this Lease, including … tax expenses payable shall be deemed to be rent."  On that basis, Subsection 11.1(b) mandates that you have ten (10) days to pay your landlord the sum of Sixty-Five Thousand Six Hundred Eighty-Nine Dollars and Ninety-Two Cents ($65,689.92) or you will be in material default of your obligations under the Lease Agreement.

**<u>PLEASE TAKE NOTICE that you have ten (10) days from date of this Notice to cure your default by paying the amount of Sixty-Five Thousand Six Hundred Twenty-Five Dollars and Three Cents ($65,689.03) to Fire House, Inc. in readily available funds (<i>certified check, bank check, money order, or electronic funds transfer</i>)</u>.  No lesser amount shall cure or excuse your default. If any balance remains uncured at the end of the tenth (10th) day, your Lease Agreement shall terminate and a lawsuit will be instituted against you for all monies owed, possession of the Premises, as well as any other appropriate remedy available to your Landlord.**

<u>INTEREST ON PAST-DUE OBLIGATIONS</u>. Article 16 of the Lease Agreement provided that all unpaid amount then due shall bear interest at the rate of twelve (12.00%) percent per annum. The interest on past-due obligations represents is a rather substantial amount in and of itself. While Fire House, Inc. is interested in receiving all the money you owe it, it is not interested in punishing you should you voluntarily comply with the terms of the Lease Agreement. Therefore, in the interest of bringing your account fully current, Fire House, Inc. is willing to forgo Interest on Past-Due Obligations upon your prompt payment within ten (10) days of above-listed arrearage, as well as proof of compliance with the below non-monetary defaults. Should any default remain, Fire House, Inc. expressly reserves the right to all contractual damages as provided in the Lease Agreement, including interest on past-due obligations.

II.      **<u>Non-Monetary Defaults.</u>**

In addition to the above-listed monetary breaches, it has come to my firm's attention that you are in default of several other important obligations contained in the Lease Agreement. Specifically, Article 4.2(b) of the Lease Agreement states, "Lessee shall, at Lessee's expenses, promptly comply

with all applicable statutes, ordinances, rules, regulations, order, covenants and restrictions of record." As recently as this past year, Fire House, Inc. received notice from Forks Township's Zoning & Codes Department that the premises was being used to conduct events in the nature of car shows which are in violation of the Zoning Ordinance. Regardless of Forks Township's ordinance holding such events as a violation, Article, 4.1 of the Lease Agreement expressly states, "the Premises shall be used exclusively for a restaurant purpose and no other purpose." This prohibition on the use of the property extends to hosting or permitting the hosting of events by third parties at the Premises. You must cease and desist this conduct immediately and in perpetuity as it is a material breach of the Lease Agreement.

Article 4.2(b) also requires you to obey all restrictions of record. Recently, it has come to my firm's attention that you place plastic crates on parking lot spaces, placing home-made signs on crates purporting to limit parking to "Richard's Only", as well as parking your vehicle across multiple parking spaces all of which are in violation of the reciprocal parking easement with the neighboring property. Article 4.2(b) expressly states, you "shall not use or permit the use of the Premises in any manner that will tend to create waste or a nuisance or shall tend to disturb other occupants in the vicinity of the Premises." In addition, the placement of the plastic crates on parking spaces labeling the parking as "Richard's Only" is a violation of the zoning, the reciprocal parking easement, as well as you Lease. Accordingly, you must cease and desist this conduct immediately and in perpetuity as it is a material breach of the Lease Agreement.

Article 6 of the Lease Agreement details your insurance requirements. Adequate Property and Liability Insurance are critical to my Client's financial security, as well as yours. Pursuant to the Lease Agreement, you must carry One Million Dollars ($1,000,000.00) in Liability Insurance and Property Insurance in an amount equal to the full value of the Premises, building, personal property, fixtures and equipment. Kindly direct your insurance company to provide proof of the status of the insurance, amount, and additional insured status of my Client. Should such a policy expressly naming my client and ensuring its position not be in effect at the present time, it would constitute a material breach of the Lease Agreement.

Article 13 of the Lease Agreement requires that you return the completed Estoppel Certificate within thirty (30) days of service of the same. Despite being presented with the Estoppel Certificates well over thirty (30) days again, you have failed to execute the and return the same. To date, my Client informs me that this has not been completed. This constitutes a material breach of your Lease Agreement.

**PLEASE TAKE NOTICE that you have THIRTY (30) days of the service of this notice to cure the Non-Monetary Defaults. If you fail to cure these non-monetary breaches by the end of the thirtieth (30th) day, your Lease Agreement will be terminated and a lawsuit will be instituted against you for all monies owed , possession of the Premises, as well as any other remedy available to your Landlord.**

Your immediate attention to this matter is required.  Please contact my office to discuss this matter more fully.  Thank you.

Very truly yours,

BELLAFATTO LAW OFFICE

BY: _____

Ralph J. Bellafatto

RJB/cp

cc:    Client
       Keene J. Jabbor, Esq.
       701 Washington Street
       Easton, Pa 18042

       Fidelity Bank
       c/o Heather Kazinetz
       1250 Braden Boulevard
       Easton, PA 18040